UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Novenergia II – Energy & Environment (SCA), Société d'Investissement à Capital Risque (21, Rue Philippe II, L-2340, Luxembourg),<br><br>Petitioner,<br><br>v.<br><br>The Kingdom of Spain (Abogacía General del Estado-Dirección del Servicio Jurídico del Estado (Government Attorney's Office), Calle Ayala, 5, 28001 Madrid, Spain)<br><br>Respondent. | Civil Action No. 1:18-cv-01148 |

**PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Petitioner Novenergia II - Energy & Environment (SCA) ("Novenergia"), by and through its undersigned attorneys, hereby brings this plenary action under Section 207 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 207, and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330, U.N.T.S. 38 (the "New York Convention" or the "Convention") and its implementing legislation under Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.*, for an order and judgment confirming, recognizing, and enforcing the final award dated February 15, 2018 (the "Final Award") in SCC Arbitration 2015/063, *Novenergia II - Energy & Environment (SCA), (Grand Duchy of Luxembourg), SICAR v. The Kingdom of Spain* (the "Arbitration"), conducted in Stockholm,

Sweden, pursuant to the 2010 Arbitration Rules of the Arbitration Institute of the Stockholm Chamber of Commerce (the "SCC").[1]

## The Parties

1. Petitioner Novenergia is a *Société d'investissement en capital à risque* (SICAR), incorporated in the Grand Duchy of Luxembourg, with legal address at 28, Boulevard Royal, L-2449, Luxembourg. Novenergia operates throughout Europe, with its principal place of business in Luxembourg.

2. Respondent Spain is a foreign state within the meaning of Section 1603(a) of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 *et seq*.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this proceeding pursuant to Section 203 of the FAA, which provides that actions or proceedings falling under the New York Convention arise under the laws and treaties of the United States and are subject to the original jurisdiction of the district courts of the United States. 9 U.S.C. § 203. This proceeding arises under the New York Convention because it is an action to recognize and enforce in the United States an arbitral award made in Sweden, a state-party to the Convention.

4. Pursuant to the United States' ratification of the Convention on September 30, 1970, and its implementing legislation under Chapter 2 of the FAA, the United States will enforce arbitral awards made in the territory of another contracting state, where such award applies to disputes arising out of legal differences, whether contractual or not, that are considered commercial. *See* 9 U.S.C. § 202 ("An arbitration agreement or arbitral award arising out of a legal

---

[1] A true and correct copy of the Final Award, as transmitted by the Tribunal, is submitted as Exhibit 1 to the Declaration of Fernando Mantilla-Serrano, executed on May 16, 2018, and served and filed simultaneously with this Petition (the "Mantilla-Serrano Declaration").

relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention"); *see also Status – Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, http://www.newyorkconvention.org/countries.

5.      The Final Award was rendered in Sweden, which ratified the Convention without reservations on January 28, 1972.[2]  *Id.*; *see also* Final Award at 200 ("Seat of the Arbitration: Stockholm, Sweden").  As detailed below, the Final Award arises out of Spain's breach of its obligations under the Energy Charter Treaty, Dec. 17, 1994 (the "ECT"), 2080 U.N.T.S. 100, an international agreement which imposes on contracting states certain obligations in relation to commercial energy activities.[3]  ECT at Art. 10; 9 U.S.C. § 202.  Both Spain and Luxembourg are parties to the ECT, thus entitling Novenergia, a national of Luxembourg, to bring claims under the ECT against Spain.  *See Constituency of the Energy Charter Conference*, https://energycharter.org/who-we-are/members-observers/; 9 U.S.C. § 202.  Moreover, the Arbitration giving rise to the Final Award, administered by the SCC, was conducted pursuant to Spain's agreement to submit to binding arbitration under the ECT.  9 U.S.C. §§ 2, 202; *see also* ECT at Art. 26(5)(a)(ii) (providing that consent to arbitrate under the ECT satisfies the requirement for a written arbitration agreement enforceable under the New York Convention).  The Final Award was rendered against a foreign state, Spain, in favor of a Luxembourg investor, Novenergia, and is not between citizens of the United States.  *Cf.* 9 U.S.C. § 202.

---

[2] Spain is also a party to the New York Convention, having ratified the Convention without reservations on May 12, 1977.  *See also Status – Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, http://www.newyorkconvention.org/countries.

[3] A true and correct copy of the ECT is submitted as Exhibit 2 to the Mantilla-Serrano Declaration.

6. This Court also has subject matter jurisdiction over this proceeding pursuant to Section 1330(a) of the FSIA, which vests United States district courts with original jurisdiction over any nonjury civil action against a foreign state with respect to which the foreign state is not entitled to immunity under the FSIA or under any applicable international agreement. 28 U.S.C. § 1330(a). Spain is not entitled to immunity because a foreign state does not enjoy sovereign immunity from a proceeding:

> in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, *or to confirm an award made pursuant to such an agreement to arbitrate, if . . . (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards* . . . or (D) paragraph (1) of this subsection is otherwise applicable.

28 U.S.C. § 1605(a)(6) (emphasis added). Here, as described in more detail below, the Final Award was rendered in an arbitration arising under the ECT, a treaty that entitled Novenergia to submit to arbitration all disputes concerning Spain's treatment of certain commercial investments made by Novenergia. ECT at Art. 26. Moreover, the Final Award is governed by the New York Convention, an international agreement in force in the United States calling for recognition and enforcement of the Final Award. Spain is further not entitled to immunity because it waived such immunity by affirmatively consenting to the arbitration of the parties' underlying dispute. *See* 28 U.S.C. § 1605(a)(l), (6).

7. This Court has personal jurisdiction over Spain pursuant to the FSIA. Under Section 1330(b) of the FSIA, United States district courts have personal jurisdiction over a foreign state as to every claim for relief over which they have original jurisdiction under Section 1330(a)

of the FSIA where service has been made under Section 1608 of the FSIA.[4] 28 U.S.C. §§ 1330(a), (b); 28 U.S.C. § 1608.

8. Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4), which provide that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia. This Petition is timely because it is filed within three years after the Final Award was made. 9 U.S.C. § 207.

## **Background**

*The Parties' Dispute*

9. The parties' dispute arose out of Spain's breach of its obligations under Article 10 of the ECT, which required Spain to provide fair and equitable treatment to investors, including Novenergia. Final Award at ¶ 399; ECT at Art. 10(1).

10. On September 13, 2007, Novenergia, an investor in renewable energy facilities, invested in eight solar energy, or photovoltaic, plants in Spain. Final Award at ¶¶ 2, 165-166, 539. Novenergia's investment was based on Spain's assurances of guaranteed tariffs to renewable energy producers, which were aimed at incentivizing companies to invest heavily in the Spanish electricity sector. *Id.* at ¶ 551.

11. Once it secured those investments, Spain changed course. Contrary to its prior assurances and investors' reasonable expectations, over the course of several years, Spain enacted

---

[4] Specifically, 28 U.S.C. § 1330(b) provides that "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title"; 28 U.S.C. § 1330(a) in turn provides that the district courts shall have original jurisdiction over a foreign state "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity under either sections 1605-1607 of this title or under any applicable international agreement."

laws and regulations which eradicated the tariffs that had induced Novenergia to invest in the first place, thus causing it significant damages.  Final Award at ¶¶ 189, 665-666, 667-668, 681.

*The Arbitration Agreement*

12. Article 26 of the ECT provides that disputes between an investor and a signatory of the ECT may be resolved through binding arbitration.  Article 26 of the ECT provides in full:

> (1) Disputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former, which concern an alleged breach of an obligation of the former under Part III shall, if possible, be settled amicably.
>
> (2) If such disputes can not [*sic*] be settled according to the provisions of paragraph (1) within a period of three months from the date on which either party to the dispute requested amicable settlement, the Investor party to the dispute may choose to submit it for resolution:
>
>> (a) to the courts or administrative tribunals of the Contracting Party party to the dispute;
>>
>> (b) in accordance with any applicable, previously agreed dispute settlement procedure; or
>>
>> (c) in accordance with the following paragraphs of this Article.
>
> (3) (a) Subject only to subparagraphs (b) and (c), ***each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provision of this Article***.
>
>> (b) (i) The Contracting Parties listed in Annex ID do not give such unconditional consent where the Investor has previously submitted the dispute under subparagraph (2)(a) or (b).
>>
>> (ii) For the sake of transparency, each Contracting Party that is listed in Annex ID shall provide a written statement of its policies, practices and conditions in this regard to the Secretariat no later than the date of the deposit of its instrument of ratification, acceptance or approval in accordance with Article 39 or the deposit of its instrument of accession in accordance with Article 41.
>>
>> (c) A Contracting Party listed in Annex IA does not give such unconditional consent with respect to a dispute arising under the last sentence of Article 10(1).
>
> (4) In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to:

(a) (i) The International Centre for Settlement of Investment Disputes, established pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of other States opened for signature at Washington, 18 March 1965 (hereinafter referred to as the "ICSID Convention"), if the Contracting Party of the Investor and the Contracting Party party to the dispute are both parties to the ICSID Convention; or

(ii) The International Centre for Settlement of Investment Disputes, established pursuant to the Convention referred to in subparagraph (a)(i), under the rules governing the Additional Facility for the Administration of Proceedings by the Secretariat of the Centre (hereinafter referred to as the "Additional Facility Rules"), if the Contracting Party of the Investor or the Contracting Party party to the dispute, but not both, is a party to the ICSID Convention;

(b) a sole arbitrator or ad hoc arbitration tribunal established under the Arbitration Rules of the United Nations Commission on International Trade Law (hereinafter referred to as "UNCITRAL"); or

(c) *an arbitral proceeding under the Arbitration Institute of the Stockholm Chamber of Commerce*.

(5) (a) The consent given in paragraph (3) together with the written consent of the Investor given pursuant to paragraph (4) shall be considered to satisfy the requirement for:

(i) written consent of the parties to a dispute for purposes of Chapter II of the ICSID Convention and for purposes of the Additional Facility Rules;

(ii) *an "agreement in writing" for purposes of article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, done at New York, 10 June 1958 (hereinafter referred to as the "New York Convention"); and

(iii) "the parties to a contract [to] have agreed in writing" for the purposes of article 1 of the UNCITRAL Arbitration Rules.

(b) Any arbitration under this Article shall at the request of any party to the dispute be held in a state that is a party to the New York Convention. Claims submitted to arbitration hereunder shall be considered to arise out of a commercial relationship or transaction for the purposes of article I of that Convention.

(6) A tribunal established under paragraph (4) shall decide the issues in dispute in accordance with this Treaty and applicable rules and principles of international law.

(7) An Investor other than a natural person which has the nationality of a Contracting Party party to the dispute on the date of the consent in writing referred to in paragraph (4) and which, before a dispute between it and that Contracting Party arises, is controlled by Investors of another Contracting Party, shall for the purpose of article 25(2)(b) of the ICSID Convention be treated as a "national of another Contracting State" and shall for the purpose of article 1(6) of the Additional Facility Rules be treated as a "national of another State".

(8) The awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute. An award of arbitration concerning a measure of a sub-national government or authority of the disputing Contracting Party shall provide that the Contracting Party may pay monetary damages in lieu of any other remedy granted. Each Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards.

ECT at Art. 26 (emphases added); Final Award at ¶ 73.

*The Arbitration*

13. On December 18, 2014, Novenergia submitted a notice of dispute to Spain pursuant to Article 26(1) of the ECT, asserting that Spain had violated its obligations under the ECT. Novenergia then sent a second notice on March 6, 2015.

14. On May 8, 2015, Novenergia submitted a Request for Arbitration to the SCC pursuant to Article 26(2) of the ECT, and appointed Professor Antonio Crivellaro as co-arbitrator. Final Award at ¶ 9.

15. On June 1, 2015, Spain submitted its Answer to the Request for Arbitration to the SCC. On June 24, 2015, Spain appointed Judge Bernardo Sepúlveda Amor as co-arbitrator. *Id.* at ¶ 13.

16. On July 29, 2015, the SCC appointed Mr. Johan Sidklev as chairperson of the arbitral tribunal (the "Tribunal") and decided that the seat of the arbitration would be Stockholm, Sweden. *Id.* at ¶ 18.

17. Both parties were represented by counsel and submitted extensive briefing in support of their positions in the Arbitration:

- On December 21, 2015, Novenergia submitted a Statement of Claim, together with expert reports, a witness statement, and legal and factual exhibits. *Id.* at ¶ 27.

- On April 29, 2016, Spain submitted its Statement of Defense and Jurisdictional Objections, together with an expert report, a witness statement, and legal and factual exhibits. *Id.* at ¶ 29.

- On June 29, 2016, the Tribunal ruled on the parties' requests for production of documents. *Id.* at ¶ 30.

- On October 17, 2016, Novenergia submitted a Reply and Answer to Jurisdictional Objections, together with reply expert reports and additional legal and factual exhibits. *Id.* at ¶ 40.

- On February 20, 2017, Spain submitted a Statement of Rejoinder and Reply to Jurisdictional Objections, together with an expert report and witness statement, as well as additional legal and factual exhibits. *Id.* at ¶ 41.

- On May 16, 2017, Novenergia submitted a Statement of Rejoinder on Jurisdictional Objections. *Id.* at 48.

18. From June 12 to June 16, 2017, the Tribunal held a hearing on jurisdiction and the merits in Stockholm, Sweden. Both parties were represented by counsel and participated fully in

the hearing. *Id.* at ¶ 55. At the hearing, Spain cross-examined Novenergia's witnesses, presented expert testimony, including a detailed presentation on damages, and vigorously argued its positions. *See, e.g. id.* at ¶ 580(d), n.446.

19. On August 25, 2017, the parties submitted post-hearing briefs, and on September 1, 2017, they submitted their respective cost submissions. *Id.* at ¶¶ 61-62.

20. On November 23, 2017, Spain requested to add a decision from the European Commission into the record, claiming that it was relevant to the jurisdiction and merits of the case. *Id.* at ¶ 63. On November 30, 2017, the Tribunal granted Spain's request, over Novenergia's objection. *Id.* at ¶ 65. At the Tribunal's invitation, Spain filed a submission relating to the European Commission's decision on December 11, 2017, and Novenergia filed its response on December 21, 2017. *Id.* at ¶ 68.

21. The Arbitration spanned nearly three years from its commencement to the issuance of the Final Award.

*The Final Award*

22. On February 15, 2018, the Tribunal issued the Final Award, totaling 199 pages and over 850 separate, numbered paragraphs.

23. After careful consideration of both parties' submissions on jurisdiction, including Spain's arguments regarding the applicability and relevance of European Union law and its relationship with the ECT, *id.* at ¶¶ 449-466, the Tribunal unanimously concluded that it had jurisdiction to hear the dispute. *Id.* at ¶ 860 (a). On the merits, the Tribunal unanimously concluded that Spain had violated Article 10 of the ECT, including the requirement that it afford Novenergia's investments fair and equitable treatment. *Id.* at ¶ 860 (b).

24. The Final Award provides, in relevant part, that Spain's changes to the tariffs regime following Novenergia's investment were "radical and unexpected," and "had a significant damaging economic effect on [Novenergia]'s investments . . . ." *Id.* at ¶ 695. Those changes by Spain "amount[ed] to a breach . . . of [Spain's] obligation to accord to the investor [fair and equitable treatment] as set out in Article 10(1) of the ECT . . . ." *Id.* at ¶ 697.

25. The Final Award orders Spain to pay Novenergia compensation in the amount of EUR 53.3 million, plus interest "from 15 September 2016 at the rate of 1.5%, compounded monthly, until full payment has been made." *Id.* at ¶ 860 (b). The Final Award further requires Spain to pay Novenergia EUR 2.6 million for the cost of the arbitration and reasonable costs incurred by Novenergia (with Value Added Tax, if applicable), plus interest on that sum "from the date of the award at the rate of 1.5%, compounded monthly, until full payment has been made." *Id.* at ¶¶ 860(d), (e). The Tribunal determined the amounts of damages and costs, as well as the amounts and start dates of the applicable interest rates, based on extensive submissions by the parties and after careful consideration of their respective positions. *See id.* at ¶¶ 843, 847, 858-859, 860(c)-(e).

26. On March 13, 2018, Spain submitted a request for Rectification, Clarification, and Complement of the Final Award. *See* Tribunal's Procedural Order No. 17 dated April 9, 2018 (the "Procedural Order") at 1.[5] Spain's request to "clarify," "interpret," or "supplement" portions of the Final Award, *id.* at 2-7, was supplemented by an additional expert report on damages containing alternative calculations, *id.* at 3. The parties made further submissions on the matters

---

[5] A true and correct copy of the Procedural Order, as transmitted by the Tribunal, is submitted as Exhibit 3 to the Mantilla-Serrano Declaration.

raised in Spain's request on March 23, March 30, April 2, and April 6, 2018, including a responsive expert report on damages from Novenergia's expert. *Id.* at 1.

27. On April 9, 2018, after careful consideration of the parties' submissions, the Tribunal rejected each of Spain's requests in full. *Id.* at 2-7.

28. The Final Award was the final decision of the Tribunal, and is final and binding. Final Award at ¶ 22; Procedural Order at 1. Article 26 of the ECT further provides that "[t]he awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute." ECT at Art. 26(8).

29. As of the date hereof, Spain has not paid Novenergia the amounts described in the Final Award.

### This Court Should Confirm the Final Award

30. Under Section 207 of the FAA, a court "shall confirm" an award covered by the New York Convention "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. None of the New York Convention grounds for denying recognition and enforcement of an award applies in this case, and so the Final Award should be confirmed. *See Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015) ("[T]he FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards.") (citation omitted).[6]

---

[6] A party resisting confirmation "bears the heavy burden" of establishing that one of the enumerated grounds for denying confirmation in Article V of the New York Convention applies. *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 16-CV-02020 (RJL), 2018 WL 1143153, at *4 (D.D.C. Mar. 2, 2018) (quoting *Gold Reserve Inc*, 146 F. Supp. 3d at 120 (D.D.C. 2015).

31.     For the foregoing reasons, Novenergia is entitled to an order confirming, recognizing, and enforcing the Final Award pursuant to 9 U.S.C. § 207.

## Prayer for Relief

32.     WHEREFORE, pursuant to 9 U.S.C. § 207, Novenergia prays that the Court enter judgment confirming the Final Award and awarding Novenergia:

(1)     The amount of EUR 53.3 million in damages;

(2)     The amount of EUR 2.6 million for the cost of the arbitration and the reasonable costs incurred by Novenergia, plus any applicable Value Added Tax;

(3)     Interest on the sum awarded in (1) from 15 September 2016 at the rate of 1.5%, compounded monthly, until full payment has been made, and interest on the sums awarded in (2) from the date of the Final Award at the rate of 1.5%, compounded monthly, until full payment has been made;

(4)     Post-judgment interest from the date of judgment until full payment has been made;

(5)     Any reasonable out-of-pocket costs and expenses incurred in enforcing payment of the Final Award (in an amount to be determined);

(6)     Any and all other further relief that the Court deems just and proper.

Dated:  May 16, 2018

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ Allen M. Gardner

Allen M. Gardner (DC Bar No. 456723)
Rebekah Soule (DC Bar No. 1033203)
555 11th St. NW
Washington, DC 20004
(202) 637-2200
allen.gardner@lw.com
rebekah.soule@lw.com


Claudia Salomon (*pro hac vice* app. to be filed)
Lilia Vazova (*pro hac vice* app. to be filed)
885 Third Avenue
New York, NY 10022
(212) 906-1200
claudia.salomon@lw.com
lilia.vazova@lw.com


Fernando Mantilla-Serrano (*pro hac vice* app. to be filed)
45, rue Saint-Dominique
Paris 75007
France
+33 1 40 62 20 00
fernando.mantilla@lw.com

*Attorneys for Petitioner*