UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NOVENERGIA II – ENERGY & ENVIRONMENT (SCA),<br><br>　　　　　Petitioner,<br><br>　　　v.<br><br>THE KINGDOM OF SPAIN,<br><br>　　　　　Respondent. | Civil Action No. 18-cv-01148 (TSC) |

## MEMORANDUM OPINION

Petitioner Novenergia II – Energy & Environment (SCA) ("Novenergia") seeks to enforce a € 53.3 million final arbitral award issued by the Arbitration Institute of the Stockholm Chamber of Commerce ("SCC Arbitration Institute") against Respondent, the Kingdom of Spain. Spain has moved to dismiss the Petition or, alternatively, to stay the proceedings until a foreign court resolves Spain's application to set aside the award. Having considered the parties' arguments, and for the reasons stated below, the court finds that a temporary stay is warranted, and therefore Spain's motion to stay will be GRANTED.

### I.  BACKGROUND

Novenergia is an investor in renewable energy facilities based in Luxembourg. (ECF No. 1 ("Petition") ¶ 10.) In 2007, it invested in eight solar energy plants in Spain to capitalize on Spain's guaranteed tariffs for renewable energy producers. (*Id.*) Spain later changed its regulations and revoked the incentives that had drawn Novenergia to invest in the projects. (*Id.* ¶ 11.) These regulatory changes allegedly caused Novenergia significant damages, and the

1

company sought to arbitrate the dispute with Spain under the Energy Charter Treaty ("ECT"). (*Id.* ¶¶ 11–23.)

The ECT is a multilateral treaty signed by 54 nations and organizations, including Spain and Luxembourg, and is intended to promote international cooperation in the energy sector. (ECF No. 2-2 ("ECT") at 2.) Article 26 of the ECT provides that "[d]isputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former" may be submitted to the SCC Arbitration Institute. (*Id.* page 24; Energy Charter Treaty, art. 26(1), (4)(c), 2002, 2080 U.N.T.S. 100.)

After Spain's regulatory changes, Novenergia requested arbitration against Spain with the SCC Arbitration Institute on May 8, 2015. (Petition ¶ 14.) Novenergia claimed that Spain's actions violated its obligation under the ECT to accord "fair and equitable" treatment to investors from signatory states. (*Id.* ¶ 9.) The SCC Arbitration Institute held arbitration proceedings in Stockholm and unanimously held that it had jurisdiction and that Spain had violated Article 10 of the ECT. (*Id.* ¶ 23.) Spain then sought suspension of the award with the Swedish Svea Court of Appeal on May 14, 2018. (ECF No. 18-1 ("Resp. Br.") at 15.) (Novenergia omitted this fact in its Petition.) Three days later the Svea Court of Appeal ruled the final award could not be enforced pending its decision on Spain's application.[1]

Two days after Spain filed with the Svea Court of Appeal, Novenergia filed a petition in this court to confirm the arbitral award pursuant to the Federal Arbitration Act, which provides for confirmation of arbitral awards falling under the Convention on the Recognition and

---

[1] The parties dispute whether the Svea Court of Appeal "suspended" the arbitral award as defined in the New York Convention. (ECF No. 22 ("Pet. Br.") at 14–17, ECF No. 25 ("Resp. Reply") at 6.) At this stage, the court need not resolve this question because the parties agree that the Svea Court of Appeal prohibited enforcement of the award in Sweden and is currently adjudicating the set-aside application. (Pet. Br. at 15; Resp. Reply at 6.)

Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention").  *See* 9 U.S.C. §§ 201–207.  MOL Hungarian Oil and Gas PLC filed an *amicus* brief in support of Novenergia's opposition to the motion to dismiss or stay the proceedings (ECF No. 37), and the European Commission filed an *amicus* brief in support of Spain (ECF No. 38).

## II.  DISCUSSION

### A.  Jurisdiction

Spain moves to dismiss on several grounds, including that the court lacks subject-matter jurisdiction to hear the merits under the Foreign Sovereign Immunities Act because no arbitration agreement exists.  (Resp. Br. at 22–29.)  Neither side challenges the court's power to enter a stay.  Nonetheless, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  Despite this obligation, a court may decide "certain non-merits, nonjurisdictional issues . . . because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'"  *Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 432 (2007) (internal quotation and citation omitted)).  When confronted with such a non-merits, nonjurisdictional threshold issue, and "when considerations of convenience, fairness, and judicial economy so warrant," a district court can "bypass[] questions of subject-matter and personal jurisdiction." *Sinochem Int'l Co.*, 549 U.S. at 432.

Courts in this District have held that stays are a threshold, non-merits issue which a court may consider before resolving jurisdictional issues.  *See Gretton Ltd. v. Republic of Uzbekistan*, No. 18-cv-1755, 2019 WL 464793, at *2–3 (D.D.C. Feb. 6, 2019) (staying petition to enforce an arbitral award before determining subject-matter jurisdiction); *Hulley Enters., Ltd. v. Russian*

*Fed'n*, 211 F. Supp. 3d 269, 277–80 (D.D.C. 2016) (same) ("A stay of proceedings in this case is exactly the type of nonmerits action the *Sinochem* decision contemplates."); *Seneca Nation of Indians v. U.S. Dep't of Health & Human Servs.*, 144 F. Supp. 3d 115, 118–19 (D.D.C. 2015) (staying an action before agency decision and before determining subject-matter jurisdiction). Accordingly, the court will resolve the threshold stay issue before the thornier jurisdictional issues which involve sovereign immunity and international treaties.

### B. Stay

The parties address whether a stay is warranted under the New York Convention, which permits staying actions to confirm arbitral awards while set-aside proceedings are ongoing in the originating country. New York Convention, art. VI, Jun. 7, 1959, 330 U.N.T.S. 38. A stay under the New York Convention would first require the court to determine jurisdiction, and here, jurisdiction turns on one of the ultimate issues—whether an agreement to arbitrate exists. Because the court has not yet ruled on this issue, its authority to issue a stay arises under its inherent powers. *See Hulley Enters. Ltd.*, 211 F. Supp. 3d at 286 (issuing a stay under the court's inherent powers before deciding subject-matter jurisdiction).

However, the test for determining whether a stay is warranted under the New York Convention articulated in *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998) is instructive. The widely-accepted *Europcar* test is on all fours with this case: whether to issue a stay when a foreign proceeding is ongoing in a foreign arbitral award matter. *See Hulley Enters. Ltd.*, 211 F. Supp. 3d at 286–87 (finding the *Europcar* factors "apply forcefully" to parallel foreign proceedings). Therefore, the court will evaluate whether a stay is warranted under both its inherent authority and the *Europcar* factors.

1. Inherent Authority

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  District courts "have broad discretion" in deciding whether to stay proceedings "pending the resolution of independent legal proceedings." *Id.*  In considering a stay, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55).  The party seeking the stay bears the burden and "'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Philipp v. Federal Republic of Germany*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (quoting *Landis*, 299 U.S. at 255).  And, as here, when a party seeks an indefinite stay, the stay "must be supported by 'a balanced finding that such need overrides the injury to the party being stayed.'" *Belize Soc. Dev.*, 668 F.3d at 732–33.  A court may not "order[] a stay 'of indefinite duration in the absence of a pressing need.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

Here, the court's interest in judicial economy favors a stay.  "Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." *Naegele v. Albers*, 355 F. Supp. 2d 129, 141 (D.D.C. 2005) (quoting *Nat'l Shopmen Pension Fund v. Folger Adam Sec.*, 274 B.R. 1, 3 (D.D.C. 2002)).  Spain's response to Novenergia's petition raises many of the same arguments already before the Svea Court of Appeal in the set-aside proceedings, which means the outcome of the Swedish proceedings "may affect this Court's determinations, at a minimum, by virtue of the[ir] persuasive value." *Hulley*

*Enters. Ltd.*, 211 F. Supp. 3d at 284; *cf. Clientron Corp. v. Devon IT, Inc.*, No. 13-cv-05634, 2014 WL 940406, at *5 (E.D. Pa. Mar. 10, 2014) (explaining a stay was not warranted where the result of the foreign proceedings would have no effect on the confirmation proceedings).

Novenergia contends that Spain's arguments to the Svea Court of Appeal are the same ones it lost before the arbitral tribunal and therefore the Swedish proceedings are an improper "second bite at the apple." (Pet. Br. at 42.) But Novenergia does not acknowledge that the Swedish proceedings are "integral" to the arbitration proceedings. *See CPConstruction Pioneers Baugesellschaft Anstalt (Liechtenstein) v. Republic of Ghana, Ministry of Roads & Transp.*, 578 F. Supp. 2d 50, 54 (D.D.C. 2008) ("Far from being at odds with the nature of arbitration confirmation proceedings, adjournments pending the completion of set-aside proceedings are an integral part of such proceedings."). Spain challenged the arbitral tribunal's authority to hear the case from the start and continues challenge it in the Svea Court of Appeal and in this court. This consistent argument regarding jurisdiction in fact weighs in favor of a stay. *See CPConstruction Pioneers*, 578 F. Supp. 2d at 54 (issuing a stay and noting Ghana had "consistently asserted" that the arbitral tribunal did not have jurisdiction).

Moreover, the Svea Court of Appeal has prohibited Novenergia from enforcing the award in Sweden pending the set-aside proceedings and affirmed that prohibition after a request for reconsideration. (ECF No. 22-27 ("Zettermarck Decl.") ¶ 14.) This prohibition weighs heavily in favor of a stay. *See In re Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea* (*Getma Int'l*), 142 F. Supp. 3d 110, 116 (D.D.C. 2015) (internal citation omitted) (finding the unenforceability of the award, pending review, weighed in favor of a stay). Indeed, Swedish courts have prohibited enforcement of awards in similar cases (*see* ECF No. 36), and the European Commission has noted the importance of the underlying issues to the

European Union (ECF No. 38 at 20–21). Under these circumstances, the prudent course of action is for this court to permit some delay pending a ruling from the Svea Court of Appeal.

The court acknowledges that this dispute has dragged on for over four years and a ruling in the Swedish court may not be imminent. The parties anticipated a decision sometime in 2019 and a referral to the EU Court of Justice could extend the proceedings into 2021 or 2022. (Zettermarck Decl. ¶¶ 15, 19; ECF No. 25-16 ("Lindskog Reply Decl.") ¶ 6.) Novenergia argues that the delay from the Swedish proceedings weighs heavily against a stay. (Pet. Br. at 38.) However, the length of delay is not the only consideration here. The Svea Court of Appeal has prohibited enforcement of the award, but none of the cases cited by Novenergia involved a foreign court prohibiting enforcement of the award. *See Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, 300 F. Supp. 3d 137, 150 (D.D.C. 2018); *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 138 (D.D.C. 2010). A hasty resolution resulting in inconsistent rulings is not in the interest of judicial economy. Consequently, despite the delay, a stay pending the outcome of the Swedish proceedings will conserve judicial resources.

Thus, in the short run, while a stay may well "delay the resolution" of the dispute, in the long run, a stay will "still 'likely be shorter than the possible delay that would occur if this Court were to confirm the award and the [Svea Court of Appeal were to] . . . then set it aside.'" *Getma Int'l*, 142 F. Supp. 3d at 114 (quoting *Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*, No. 05-cv-0423, 2005 WL 3533128, at *3 (W.D. Pa. Dec. 22, 2005)).

Balancing the hardships to each party also favors a stay. Litigating the validity of arbitral awards in two forums would burden Spain, which filed its appeal in the originating country before Novenergia filed here. Moreover, the risk of premature enforcement could result in Spain trying to recover assets seized during this action if it were to prevail in the Swedish proceedings.

*Getma Int'l*, 142 F. Supp. 3d 110, 118 (D.D.C. 2015).  Novenergia argues that it will suffer hardship from continued delay in recovering its award and this outweighs any hardship to Spain, a sovereign state with ample resources.  (Pet. Br. at 42–43.)  But the Swedish court has already stayed enforcement of the award, and if Novenergia ultimately prevails it will be compensated for any delay because the award includes interest.  (Pet. ¶ 25.)  Thus, the hardship to Spain, which could be significant, outweighs the hardship to Novenergia.

    2. *Europcar* Factors

While neither the New York Convention nor the Federal Arbitration Act provide factors to consider in deciding a stay, courts in this Circuit have looked to the six factors set forth in *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998).  *See, e.g.*, *Gretton Ltd.*, 2019 WL 464793, at *3; *Hardy Expl. & Prod. Inc. v. India*, 314 F. Supp. 3d 95, 105 (D.D.C. 2018); *Hulley Enters. Ltd.*, 211 F. Supp. 3d at 286–87; *Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 192 (D.D.C. 2016).  *Europcar* instructs courts to consider:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
> (4) the characteristics of the foreign proceedings . . . ;
> (5) [a] balance of the possible hardships to the parties . . . ; and
> (6) [a]ny other circumstances that could tend to shift the balance in favor of or against adjournment . . . .

156 F.3d at 317–18.  These factors "balance the Convention's policy favoring confirmation of arbitral awards against the principle of international comity embraced by the Convention." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 (11th Cir. 2004); *see also G.E. Transp. S.P.A.*, 693 F.Supp.2d at 138.  Here, comity considerations favor a stay:

the Swedish proceedings were initiated before this action, the Swedish court has already acted to prohibit enforcement of the arbitral award, and the issue is of importance to the EU and better suited for initial review in their courts. While this delays confirmation proceedings, the risk of inconsistent results and the interest in international comity outweigh the interest in a quick resolution of this case.

The first and fifth *Europcar* factors involve judicial economy and balance hardships between the parties, factors that the court considered in exercising its inherent authority. *Europcar Italia, S.p.A.*, 156 F.3d at 317. As explained above, while a stay here will delay the resolution, it promotes judicial economy, and the balance of the hardships favors Spain.

The second, third, and fourth *Europcar* factors involve the status and characteristics of the foreign proceedings. *Id.* at 317. In totality, these factors favor a stay.

The second factor considers the status of the foreign proceedings. *Id.* As explained above, despite the length of time to resolve the Swedish proceedings, the fact that the award cannot be enforced pending the Swedish litigation weighs against a stay. *See Getma Int'l*, 142 F. Supp. 3d at 116 (internal citation omitted).

The third factor concerns the standard of review in the foreign proceedings. *Europcar* explains that the New York Convention's "limited scope of review" "favors deference to proceedings in the originating country that involve less deferential standards of review on the premise that, under these circumstances, a foreign court well-versed in its own law is better suited to determine the validity of the award." 156 F.3d at 317. The parties disagree about the standard of review the Svea Court of Appeal will apply. (Resp. Br. at 40–41; Pet. Br. at 34–35.) This disagreement mirrors their position on the merits regarding whether EU law applies, and for the reasons noted above, the court declines to reach this question. Therefore, while it is unclear

whether the Svea Court of Appeal will apply a less deferential standard of review, the possibility that the court will set aside the award "weighs mildly in favor of granting a stay." *See Getma Int'l*, 142 F. Supp. 3d at 116 (internal quotations omitted).

The fourth factor looks at the characteristics of the foreign proceedings, including whether they were brought to enforce the award, who initiated them and when, and whether the circumstances evince a desire to hinder or delay resolution of the dispute. *Europcar Italia, S.p.A.*, 156 F.3d at 318. Here, Spain brought the Swedish proceedings to set aside the award, which weighs against a stay. *Id.* at 318. But the Swedish proceedings were initiated two days before this case, which therefore raise issues of international comity, weighing in favor of a stay. *See Getma Int'l*, 142 F. Supp. 3d at 116–17 (collecting cases). Despite Novenergia's argument that Spain is unfairly relitigating issues before the Svea Court of Appeal, there is nothing to suggest that Spain brought the Swedish proceedings to delay enforcement of the arbitral award. *Id.* ("It goes without saying that issues necessarily have to be 'relitigated' in an appellate-like proceeding.").

Thus, while some aspects of the status and characteristics of the foreign proceedings weigh against a stay, in totality, they weigh in favor of a stay.

The sixth factor looks to "any other circumstances that could tend to shift the balance in favor of or against adjournment." *Europcar Italia, S.p.A.*, 156 F.3d at 317. Spain emphasizes that international comity requires a stay because the issues are important to the European Union and should be resolved within the Union's judicial system. (Resp. Br. at 36.) Novenergia responds that Spain is hiding behind jurisdictional arguments already rejected by several arbitral tribunals. (Pet. Br. at 43–44.) While Novenergia may prevail on the merits, the court agrees

with Spain that the more prudent course of action is to allow courts within the EU to first decide the issues.

In sum, Spain has met its burden to show a "pressing need" for a stay pending the outcome of the set aside proceedings in Sweden. However, in an effort to ensure that the proceedings are not unduly delayed, by separate order, the court will provide for prompt and regular review of the ongoing proceedings before the Svea Court of Appeal and, if Novenergia prevails in those proceedings, will promptly address the merits in this case.

### C. Adequate Security

Novenergia argues that any stay should be conditioned on Spain posting bond for the full amount of the final award plus interest, pursuant to Article VI of the New York Convention. (Pet. Br. at 45.) As explained above, the court has not determined whether it has jurisdiction under the New York Convention, and therefore cannot order security under the Convention. Further, courts in this Circuit generally have not required foreign sovereigns to post security because they are "presumably . . . solvent and will comply with legitimate orders issued by courts in this country or in [their home jurisdiction.]" *DRC, Inc. v. Republic of Honduras*, 774 F. Supp. 2d 66, 76 (D.D.C. 2011); *see also Getma Int'l*, 142 F. Supp. 3d at n.10; *cf. Stati*, 199 F. Supp. 3d at n.7 (not imposing security because parties anticipated relatively short stay). Therefore, at this time, the court will not require Spain to post bond.

### III.   CONCLUSION

For the reasons stated, Respondent's motion to stay is hereby GRANTED and proceedings are stayed until resolution of the current set-aside proceedings in Sweden. A corresponding Order will issue separately.

Date:  January 27, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge